UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL HOLMAN,

     Plaintiffs,

v.                              CASE NO.: 8:08-cv-305-T-23MAP

STUDENT LOAN XPRESS, INC.,

     Defendant.

_____/

## ORDER

A January 4, 2011, order (Doc. 129) approves a settlement (Doc. 127-1) in this class action under the Ohio Retail and Installment Sales Act ("RISA")[1] and permanently enjoins further action against the defendant in accord with the settlement agreement. The plaintiffs and class counsel move (Doc. 126) unopposed for approval of the defendant's paying an attorney's fee, costs, and service awards.

Before filing this action, class counsel and each class representative executed a representation agreement (Doc. 140), in which the class representative agrees that class counsel shall receive as compensation for the representation either (1) "the amount of fees ordered by the court or agreed by the defendant to be paid directly to counsel" or (2) forty percent of the total recovery, "whichever is greater." The "recovery" under the settlement agreement consists primarily of reduced student loan obligations through forgiveness of principal and interest, interest rate modification, and favorable

_____

[1] The plaintiffs also assert (Doc. 119) claims of aiding and abetting fraud and negligent misrepresentation.

credit reporting.  Little or no "total recovery" occurred within the meaning of the

compensation clause of the representation agreement.  No common fund with cash

exists from which class counsel may seek compensation.  RISA, which provides a claim

in recoupment for relief from indebtedness, contains no provision awarding an

attorney's fee to the prevailing party.  Therefore, payment of class counsel's fee in this

action depends solely upon the defendant's agreeing to pay.  In settlement negotiations

assisted by a mediator, the parties agreed in the following terms (Doc. 127-1) to the

defendant's payment of fees and costs:

> Class Counsel shall apply to the Court for approval of an award of
> attorneys' fees, costs, and expenses, based on their lodestar, plus
> an appropriate multiplier, in an amount not to exceed four million
> nine hundred and seventy thousand dollars ($4,970,000.00), in
> accordance with the applicable legal precedents therefor, and
> conditioned upon the Settlement reaching its Final Effective Date.
> [The defendant] SLX shall pay the attorneys' fees, costs, and
> expenses awarded by the Court, provided that the amount awarded
> for attorneys' fees, costs, and expenses does not exceed
> $4,970,000.00.

In sum, rather than specifying an attorney's fee, the agreement (1) limits the defendant's

payment to $4,970,000.00 and (2) delegates to the court the decision as to amount,

provided only that the amount both derives from class counsel's lodestar and an

appropriate multiplier and accords with applicable precedent.  In other words, the

parties proved unable to agree on an attorney's fee and agreed instead, akin to an

arbitration agreement, to accept the court's decision on the amount of the attorney's fee,

subject to a fee cap.  In the pending motion (Doc. 126), the plaintiffs and class counsel

seek from the defendant a payment equal to the fee cap of $4,970,000.00

($4,830,958.53 in attorney's fees and $139,041.47 in costs) plus $29,500.00 in service awards.

Discussion

A January 6, 2011, order (Doc. 130)—which is incorporated by reference into, and attached to, this order—finds (1) that class counsel fail to provide sufficient evidence that class counsel's hourly rate qualifies as the prevailing market rate in the Middle District of Florida; (2) that an hourly rate exceeding $500 appears substantially above the prevailing market rate; (3) that class counsel's hours appear neither excessive, redundant, nor otherwise unnecessary; (4) that, although the requested (Doc. 126) 1.77 multiplier appears reasonable for a class action resulting in a cash settlement of the same value as the non-cash settlement in this action, class counsel fail to justify as reasonable in this instance a multiplier of 1.77, which nearly doubles the hourly rate; (5) that counsel's expenses appear reasonable and necessary to achieving ultimate relief for the class; and (6) that the request for service awards for each class and sub-class representative appears both reasonable and consistent with prevailing practice. The order (Doc. 130) provides class counsel with the option of either accepting a proposed award based on the court's tentative assessment or supplementing class counsel's motion.

Class counsel elect to supplement the motion and provide an additional memorandum (Doc. 135) in support of the motion, supplemental declarations of both Andrew August and Christopher Casper (Docs. 136, 137), and the declaration of Kevin Kelly (Doc. 138), who declined to represent several former students of Silver State in

pursuing a claim similar to the claim class counsel pursued.  In the supplemental

memorandum, class counsel (1) provide three examples of recent cases in the Middle

District of Florida and the hourly rate awarded in each case; (2) argue that the "relevant

market" analysis should account for "national market considerations" and the quality of

opposition counsel; (3) assert that only a few are both able and willing to represent the

plaintiffs in this action and that some attorneys (e.g., Kevin Kelly) declined; (4) argue

that class counsel possess skill, experience, and reputation comparable to counsel in

similar actions; (5) assert that a multiplier resulting in a fee award equal to the parties'

negotiated fee cap rests within the range of "appropriate" multipliers; (6) argue that a

post-multiplier hourly rate analysis is pertinent only in a case involving a request for fees

under a fee-shifting statute; and (7) state that, if analyzed in the same way as an action

in which the fee derives from a common fund, the negotiated fee amounts to only 8.6

percent of the unconditional relief provided to the class.

### 1. A Reasonable Hourly Rate

    "To arrive at a lodestar figure . . ., the district court must first determine the

number of hours reasonably spent by the plaintiffs' counsel on the matter, then multiply

those hours by an hourly rate the court deems reasonable for similarly complex

non-contingent work."  Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 772

(11th Cir. 1991) (citing Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary

Corp., 487 F.2d 161 (3d Cir. 1973)); Loranger v. Stierheim, 10 F.3d 776, 781-82 (11th

Cir. 1994).  Contemporaneous with Lindy Bros., which adopts the lodestar analysis,

Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714 (5th Cir. 1974), adopts a "twelve-

factor method of determining court-awarded attorney's fees."[2]  <u>Camden I</u>, 946 F.2d at

772.  Although <u>Johnson</u> reviews an award of attorney's fees under a federal fee-shifting

statute (and considers neither a contractually negotiated award nor a common fund),

the <u>Johnson</u> factors provide a framework applicable beyond statutory fee-shifting.  In

fact:

> most commentators consider <u>Johnson</u> to be little different from <u>Lindy</u>
> because the first criterion of the <u>Johnson</u> test, and indeed the one
> most heavily weighted, is the time and labor required. Similarly,
> many of the Johnson factors are subsumed within the initial
> calculation of hours reasonably expended at a customary hourly rate.
> . . . In <u>Norman</u> [a fee-shifting case], this court noted the lodestar
> approach has been favored 'because it produces a more objective
> estimate and ought to be a better assurance of more even results.'

<u>Camden I</u>, 946 F.2d at 772-73 (citations omitted).  In this instance, the parties

negotiated for application of the lodestar analysis.

"[A] party seeking attorney's fees bears the burden of producing 'satisfactory

evidence that the requested rate is in line with prevailing market rates.'"  <u>Loranger v.

Stierheim</u>, 10 F.3d 776, 781 (11th Cir. 1994) (quoting <u>Norman</u>, 836 F.2d at 1299).

"Satisfactory evidence" means "'more than the affidavit of the attorney performing the

work.'"  10 F.3d at 781.  However, "[t]he court . . . is itself an expert on the question and

may consider its own knowledge and experience concerning reasonable and proper

---

[2] The factors consist of (1) the time and labor required; (2) the novelty and difficulty of the issue; (3) the skill necessary to perform competently; (4) the preclusion of other employment because of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by either the client or the circumstances; (8) the amount in controversy and the result obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  488 F.2d at 717-18.

fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value." Campbell v. Green, 112 F.3d 143, 144 (5th Cir. 1940).[3]

As to the reasonable hourly rate, class counsel adduces neither binding precedent nor persuasive argument in support of incorporating a "national market consideration" into the standard announced in Norman v. Housing Auth., 836 F.2d 1292, 1299 (11th Cir. 1988), which considers "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." See Am. Civil Liberties Union v. Barnes, 168 F.3d 423, 436-38 (11th Cir. 1999) (reversing an award of attorney's fees based on non-local rates); see also Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008) (finding that "[g]enerally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."); MANUAL FOR COMPLEX LITIGATION (4th ed.) § 14.122 ("What constitutes a reasonable hourly rate varies according to geographic area and the attorney's experience, reputation, practice, qualifications, and customary charge. The rate should reflect what the attorney would normally command in the relevant marketplace."). "[R]eputation and experience are usually only proxies for skill, which in a rational economic environment is the ultimate determinant of compensation level." Norman, 836 F.2d at 1300. As Norman explains:

> [t]hroughout, and particularly if litigation is begun, the word 'skill'
> incorporates the notions of organization and efficiency. An
> attorney of great skill organizes his thoughts, his work, and his presentation in
> a logical and orderly way without lost motion or false starts so that
> each move builds upon the last to the achievement of the goal.

---

[3] Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981), renders binding each opinion of the former Fifth Circuit Court of Appeals decided on or before September 30, 1981.

> Organization means that discovery devices and motions are thought out and not utilized in a random and erratic way or for the mere purpose of going through established routines. Efficiency means doing well just what ought to be done and doing it in a minimum of time.

836 F.2d at 1300-01.

In seeking approval, class counsel fail (1) to cite the applicable and binding hourly rate standard—i.e., "the prevailing market rate in the relevant legal community"; (2) to provide satisfactory evidence of the prevailing market rate; (3) to describe class counsel's hourly rates and compare class counsel's rates to the rates of a comparable attorneys in comparable cases; and (4) to provide a concise, organized, and readily understandable statement of the fee requested by each law firm.  Rather, reviewing and interpreting class counsel's pending motion (Doc. 126) requires the court's assembling information (1) from the pending motion and class counsel's earlier motion (Docs. 99, 126-1), which the amended settlement renders moot and which the pending motion incorporates by reference; (2) from the initial declarations (Docs. 100, 101) of class counsel and supplemental declarations (Docs. 127, 128) of class counsel; (3) from four separate billing statements (Docs. 100-3, 101-2, 127-3, 128-1), two of which (Docs. 100-3, 127-3) fail to identify the hourly rate claimed by each attorney; (4) from surveys of billing rates, almost all of which pertain to markets outside of the Middle District of Florida; (5) from applicable but unidentified (in class counsel's motions or otherwise) Eleventh Circuit precedent; and (6) from an expert opinion that relies upon a largely inapplicable study of fee awards in common fund cases involving cash settlements.

To supplement class counsel's motion,[4] class counsel identify from the Middle District of Florida a few recent cases involving class action settlements and the hourly rates approved in each case. <u>Lockwood v. Certegy Check Serv., Inc.</u>, Case No. 8:07-cv-1434-T-23TGW, approves without discussion partner rates ranging from $450 to $750 an hour. <u>Griffin v. Capital One Bank</u>, Case No. 8:08-cv-132-T-33EAJ, finds excessive class counsel's hourly rate and, after supplemental briefing, reduces each hourly rate in accord with the "Laffey Matrix," which the U.S. Department of Justice relies upon in statutory "fee-shifting" cases. The rates on the Laffey Matrix (1) derive from the hourly rates approved in <u>Laffey v. Northwest Airlines, Inc.</u>, 572 F. Supp. 354 (D.D.C. 1983) and an adjustment based on the consumer price index for the Washington, D.C.-Baltimore region and (2) range from $335 for an attorney with eight to ten years of experience to $475 for an attorney with over twenty years of experience.[5] The rates on the Laffey Matrix present relevant evidence of the prevailing market rate for litigation counsel in the Washington, D.C., area.[6] <u>In re TECO Energy, Inc. Securities Litigation</u>, Case No. 8:04-cv-1948-T-27EAJ, awards fees based on twenty-five percent of the common fund. <u>TECO Energy</u> notes without further discussion that class counsel's lodestar (provided to facilitate an analysis of the common fund request)

---

[4] As described in the January 6, 2011, order (Doc. 130), class counsel provide an attachment that describes certain average partner billing rates at leading Middle District firms rates, including (1) $310 (GrayRobinson, Orlando); (2) $360 (Fowler White Boggs Banker, Tampa); (3) $378 (Broad and Cassel, Orlando); and (4) $435 (Carlton Fields, Tampa). The highest billing rate of a partner (attorneys markedly senior to any of class counsel) at each firm consists of $650, $525, $475, and $650 an hour, respectively.

[5] <u>See</u> http://www.justice.gov/usao/dc/Civil_Division/Laffey_Matrix_8.html, Explanatory Note 3.

[6] <u>See</u> http://www.justice.gov/usao/dc/Civil_Division/Laffey_Matrix_8.html, Explanatory Note 4; <u>Covington v. District of Columbia</u>, 57 F.3d 1101 (D.C. Cir. 1995).

suffers from excessive hourly rates of $700.  As additional evidence of class counsel's skill, experience, and reputation, class counsel provides supplemental declarations (Docs. 136, 137) that describe class counsel's education, experience, reputation, publications, communication with members of the class, and recognized expertise in class action litigation.

In this instance, the evidence is neither satisfactory nor persuasive.  Neither the fee approved in Capital One Bank nor the fee approved in Certegy provide convincing evidence of the prevailing market rate in the Middle District of Florida (1) because Capital One Bank relies on rates calculated based on the consumer price index in a region outside the Middle District of Florida and (2) because in Certegy neither the motion for approval nor the approval order analyze the hourly rates requested by class counsel.  Certegy offers little helpful precedent on this particular issue.  TECO Energy also provides no helpful precedent, because TECO Energy contains no discussion of either the hourly rates requested or the prevailing market rate.

Class counsel achieved a laudable settlement for the class.  However, an hourly rate that aligns with the average partner billing rate at a leading firm in the Middle District of Florida ($310 to $435) will more than adequately compensate class counsel. Based on proposed hourly rates ($550 for Casper, $600 for Newcomer, $550 for August, and $400 for Rooney) that exceed the prevailing market rate for an attorney of comparable skill, experience, and reputation and based on the court's knowledge of the prevailing rate in the relevant market, the court's tentative assessment ($325 for Casper, $355 for Newcomer, $355 for August, $325 for Rooney) is more than

reasonable.  An application of these rates to class counsel's 5,704.95 hours results in a lodestar of $1,841,477.35.

### 2. An "Appropriate" Multiplier

"The lodestar figure may be adjusted, either upward or downward, to account for several factors including, <u>inter alia</u>, the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, the risk of nonpayment, and any delay in payment."  MANUAL FOR COMPLEX LITIGATION (4th ed.) § 14.122; <u>Camden I Condo. Ass'n, Inc. v. Dunkle</u>, 946 F.2d 768, 772 (11th Cir. 1991) (finding that the "lodestar figure may . . . be adjusted upward or downward for certain factors known as multipliers, such as contingency and the quality of the work performed, to arrive at a final fee.").  The court's tentative assessment (Doc. 130) employs the 1.77 multiplier that class counsel request in the pending motion (Doc. 126).

In the supplemental memorandum (Doc. 135), class counsel (1) state that "if the [c]ourt stands on its tentative assessment of appropriate hourly rates, the resulting multiplier to reach the amount of the agreed upon fees would still fall at the lower end of the range of multipliers awarded in similar cases"; (2) provide a chart that calculates the "resulting multiplier based on various potential hourly rates when applied to the negotiated fee amount . . ."; (3) argue that "the resulting range of multipliers when applied to the negotiated fee amount here is still well within the range of reasonableness[] and actually below the typical multipliers approved in comparable cases."; (4) state that "[i]f the court holds to the hourly rates set forth in the order, a multiplier of roughly 2.67 would result in the amount of the agreed upon fees in the

- 10 -

[a]mended [s]ettlement [a]greement (after subtracting costs and incentive awards): $4,830,958"; and (5) note that "[i]f the court increases the amount of the hourly rates as requested below, [c]lass [c]ounsel would of course seek the application of a lower multiplier so as to arrive at the negotiated fee."  In other words, class counsel request whatever multiplier results in class counsel's receiving a fee that equals the fee cap of $4,970,000.00.

Class counsel's request, however, relies on several mistaken premises.  The settlement in this instance contains no "agreed upon fee" but rather a cap on the fee that the defendant will pay.  Furthermore, even if the settlement contained an "agreed upon fee," "[a] district court is not bound by the agreement of the parties as the amount of attorneys' fees."[7]  A common fund case—in which the parties reach a cash settlement and in which class counsel seek a percentage of the cash as a fee—presents a scenario both distinct and entirely dissimilar from the non-cash settlement and negotiated fee cap in this instance.  Additionally, the quality of the representation, the risk of non-payment, the complexity of the case, and the benefit obtained for the class drive the size of the multiplier.  The multiplier is not an infinitely elastic tool to permit the award of a pre-determined or aspirational fee, which bears the imprimatur of mathematical objectivity but which, in reality, results from a cynical contrivance.  Class counsel's invitation is rejected.

Class counsel argue (Doc. 135) that an increased multiplier is "within the range of appropriate multipliers" because (1) of the magnitude of the recovery (over $100 million

---

[7] Piambino v. Bailey, 610 F.2d 1306, 1328 (5th Cir. 1980).

in debt relief and other benefits); (2) of the undesirability of this case and the substantial risk class counsel assumed in seeking relief for the former Silver State students; and (3) of the unfavorable nature of the claim and the lack of success in other, similar actions against student lenders.  Class counsel provide (1) a 2003 study of attorney's fee awards in common fund cases, which study identifies 4.50 as the average multiplier (based on the lodestar cross-check) for a case in which the cash recovery exceeds $100 million[8] and (2) the declaration of Kevin Kelly, who successfully represented several plaintiffs in a similar class action involving student loans but who declined to represent several former students of Silver State because of "the marginal economic viability of such a case, the disruption to [Kelly's] primary practice, the many procedural and substantive hurdles, and the much larger group of student victims . . . ."

Class counsel's request for a larger multiplier based on the court's tentatively assessed and lower hourly rates is both inappropriate and unsupportable.  Neither the hourly rate nor the final fee drives the size of the multiplier.  Rather, the multiplier depends upon the quality class counsel's work, the contingency of payment, the

---

[8] The study (Doc. 102) surveys the effective multiplier in so-called "megafund" cases, in which the settlement involves a cash fund of more than $100 million.  See, e.g., Stop & Shop Supermarket Co. v. SmithKline Beecham Corp., 2005 WL 1213926, *9-*10 (E.D. Pa. 2005).  As explained by Stop & Shop:

> [I]n addition to reviewing the Gunter factors, "it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method."  The purpose of the lodestar cross-check echoes the second goal of the Court's analysis of motions for attorneys' fees: the avoidance of "windfall fees."  The lodestar cross-check is performed to "ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple."  "The goal of this practice is to ensure that the proposed fee award does not result in counsel being paid a rate vastly in excess of what any lawyer could reasonably charge per hour, thus avoiding a 'windfall' to lead counsel."

2005 WL 1213926 at *15 (citations omitted).

- 12 -

complexity of the issues, the benefit obtained for the class, and the delay in payment. As noted earlier, class counsel achieved a laudable settlement for the class.  An objective inspection of the record reveals that in this action class counsel demonstrates sufficient, but not extraordinary, competency and skill.  As the January 6, 2011, order (Doc. 130) finds, this action involved "a somewhat novel and relatively difficult (albeit not the most complex) issue, required skill to perform competently, precluded other employment by class counsel (who dedicated to this case almost 6,000 hours over two years), relied on counsel's accepting a contingency fee arrangement, and contained aspects of undesirability based on the lack of favorable precedent."  Compared to other class actions both pending on the district court's civil docket and resolved in years past, this action—which asserts a claim in recoupment, aiding and abetting fraud, and negligent misrepresentation—presents neither the most difficult issue and nor the most complex subject matter.  However, because class counsel possess no entitlement to fees based on either a percentage of a fund or a fee-shifting statute, class counsel faced a significant risk of receiving nothing.  Furthermore, class counsel waited over two years to receive payment.  Accordingly, the multiplier (1.77) that class counsel request in the unopposed motion (Doc. 126) for attorney's fees appears both "appropriate" and in accord with the applicable standard.

Conclusion

Accordingly, the unopposed motion (Doc. 126) for an award of attorney's fees, costs, and service awards is **GRANTED IN PART**, and in accord with Rule 23(h), Federal Rules of Civil Procedure, class counsel is **AWARDED $3,427,956.38** in

attorney's fees, costs, and service awards.  The award comprises (1) $3,259,414.91 in attorney's fees (based an the hourly rate of $325 for Casper, $355 for Newcomer, $355 for August, $325 for Rooney; a lodestar of $1,841,477.35; a multiplier of 1.77);[9] (2) $139,041.47 in costs; and (3) $29,500.00 in service awards.

ORDERED in Tampa, Florida, on March 17, 2011.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[9]  The January 6, 2011, order (Doc. 130) provides a tentative assessment (based on the court's knowledge and an evaluation of the information counsel submitted) of the prevailing rate in the relevant market.  The assessment assigns an hourly rate of $325 to James Hoyer's Christopher Casper, class counsel claiming the most time and located in the relevant market.  Each attorney at James Hoyer receives a proportionate reduction in the claimed hourly rate (e.g., $355 for John Newcomer), except for an attorney claiming an hourly rate of $200 or less.  Andrew August of the Pinnacle Law Group receives the same rate as John Newcomer, and Kevin Rooney of the Pinnacle Law Group receives the same rate as Casper (based on each attorney's relative tenure and experience).  This results in a lodestar of $801,536.10 for James Hoyer and $1,039,911.25 for the Pinnacle Law Group, amounting to a total lodestar of $1,841,477.35, yielding an average hourly rate of $322 for James Hoyer and $324 for the Pinnacle Law Group.